**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 22, 2013**

# In the Court of Appeals of Georgia

A12A2435. CARTER v. SCOTT.

MILLER, Presiding Judge.

Christopher Scott sued Merrill Carter, as executor of the estate of Dr. Gordon W. Jackson, for injuries Scott allegedly sustained when Jackson kicked him in the knee. At the time of the alleged injury, Jackson was a resident of an advanced Alzheimer's unit at the assisted living facility where Scott worked as a security guard. Carter answered, raising several defenses, including lack of mental capacity. Scott moved for partial summary judgment on the issue of Jackson's lack of mental capacity. Carter filed a cross-motion for summary judgment. The trial court granted Scott's motion for partial summary judgment, and denied Carter's motion. This Court granted Carter's application for interlocutory appeal to review the trial court's decision. On appeal, Carter contends that Jackson, who was an institutionalized

mental patient, owed no duty to Scott. Carter also contends that Scott assumed the risk of his injuries as a matter of law. For the following reasons, we affirm the grant of partial summary judgment to Scott on the issue of Jackson's lack of mental capacity. We also affirm the denial of summary judgment to Carter on that issue. However, we reverse the denial of summary judgment to Carter on the issue of whether Scott assumed the risk of his injuries. Accordingly, the trial court's decision is affirmed in part and reversed in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a [grant or] denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations and footnote omitted.) *Geico Gen. Ins. Co. v. Wright*, 299 Ga. App. 280 (682 SE2d 369) (2009).

So viewed, the evidence shows that Jackson began residing at Carlyle Place (hereinafter "the facility") in 2003. Thereafter, Jackson suffered a dramatic decline in his mental capacity as a result of progressive Alzheimer's disease. In September

2

2008, when Jackson exhibited agitation, aggression and combative behavior, he was transferred to the facility's Alzheimer's unit.

On the night of December 23, 2008, Jackson was involved in a physical altercation. Scott, who worked as a security guard at the facility, received a call on his radio informing him of the fight. Upon arriving at the scene of the fight, Scott observed Jackson swinging and striking a nurse with his fists. Scott moved between Jackson and the nurse and separated them to break up the fight. Another resident then hit Scott in the head with her hand, and Jackson kicked Scott in the left knee, causing Scott's leg to buckle because of the pain.

Jackson died in November 2010, and his daughter, Carter, was appointed as executor of his estate. In August 2011, Scott brought suit against Jackson's estate seeking to recover for the injuries he allegedly suffered as a result of Jackson's actions. Carter answered, raising the affirmative defenses of lack of mental capacity and assumption of the risk.[1]

---

[1] Carter also contended in her answer and on appeal that Scott's sole and exclusive remedy was a worker's compensation claim because the injury occurred on his job. At oral argument before this Court, Scott's counsel admitted that Scott had received worker's compensation benefits for his injury. The Court notes, however, that injured employees who receive workers' compensation payments retain their right to bring an action against third-party tortfeasors. See *Coker v. Deep South Surplus of Ga., Inc.*, 258 Ga. App. 755 (574 SE2d 815) (2002); see also *Ga. Star*

Scott moved for partial summary judgment, asserting that, as a matter of law, Jackson's documented lack of mental capacity did not relieve him of liability. Carter filed a cross-motion for summary judgment, contending that Jackson, an institutionalized Alzheimer's patient, lacked capacity to control his conduct, and owed no duty of care to Scott, who was a paid employee of that institution. Carter also contended that Scott assumed the risk of his alleged injuries as a matter of law. The trial court granted Scott's motion for partial summary judgment. The trial court denied Carter's motion for summary judgment on the mental capacity defense, finding that "an insane person is liable for his torts the same as a sane person." The trial court also denied Carter's motion for summary judgment on the issue of whether Scott assumed the risk, finding that the factual record contained a material dispute that required jury resolution of that issue.

1. Carter contends that the trial court erred in granting Scott's motion for partial summary judgment, and denying her motion for summary judgment on the mental capacity defense. Specifically, Carter contends that the trial court should have adopted a rule that an institutionalized mental patient, who lacks capacity, owes no

_Plumbing, Inc. v. Bowen_, 225 Ga. App. 379, 380 (484 SE2d 26) (1997).

duty to an employee of the institution whose very duties contemplate dealing with patients who pose a risk of violent conduct. We disagree.

Carter acknowledges that Georgia law clearly provides that

in a civil action for an injury done to the person or property of another, the intent is generally immaterial, and the rule is that an insane person is liable for his torts the same as a sane person, except for those torts in which malice, and therefore intention, is a necessary ingredient. In respect to this liability[,] there is no distinction between torts of nonfeasance and of misfeasance; and consequently an insane person is liable for his injuries caused by his tortious negligence. Insane persons are held to this liability on the principle that where a loss must be borne by one of two innocent persons, it shall be born by him who occasioned it.

(Punctuation omitted.) *Central of Ga. R. Co. v. Hall*, 124 Ga. 322, 333 (52 SE2d 679) (1905); see also *Continental Cas. Co. v. Parker*, 167 Ga. App. 859, 860 (1) (307 SE2d 744) (1983). Applying this principle in a suit for compensatory damages arising from an assault, this Court has found that the fact that the defendant was in the throes of a condition of unsound mind, and was therefore incapable of forming or having any mental intent to injure, was not a defense. See *Sauers v. Sack*, 34 Ga. App. 748, 750-752 (131 SE 98) (1925). Moreover, this Court has held that insanity or lack of

5

competence is a defense only to an intentional tort. See *State Farm Fire &c. Co. v. Morgan*, 185 Ga. App. 377, 379-380 (2) (b) (364 SE2d 62) (1987).

Although Carter argues that an exception to this rule should be made for an institutionalized mentally disabled person who injures a paid caregiver or other staff person, the cases Carter cites in support of her argument are not cases decided by Georgia's courts and have no binding precedential value. Georgia law provides that Jackson's mental deficiencies cannot relieve him of liability for his negligent acts. See *Central of Ga. R. Co.*, supra, 124 Ga. at 333; *Continental Cas. Co.*, supra, 167 Ga. App. at 860. Therefore, we affirm the trial court's grant of partial summary judgment to Scott, and the trial court's denial of summary judgment to Carter on this ground.

2. Carter also contends that the trial court erred in denying her motion based upon her assumption of the risk defense.[2] Carter argues that the undisputed evidence

---

[2] Carter argued in her appellate brief and in oral argument that Scott assumed the risk of his injuries because he was hired as a security guard to control the precise dangers he encountered. Carter further analogized this case to the Fireman's Rule, which provides that "[a] public safety officer cannot base a tort claim upon damage caused by the very risk that he is paid to encounter and with which he is trained to cope." (Citations and punctuation omitted.) *Martin v. Gaither*, 219 Ga. App. 646, 651 (466 SE2d 621) (1995). We need not reach these contentions because we find that Scott assumed the risk as a matter of law.

established without question that Scott assumed the risk of his injuries and was precluded from recovering as a matter of law. We agree.

Although Georgia law provides that Jackson can be held liable for his negligence, the crux of this case pertains to the application of assumption of risk principles. OCGA § 51-11-2 provides the statutory basis for the assumption of risk defense, stating that "no tort can be committed against a person consenting thereto if that consent is free, is not obtained by fraud, and is the action of a sound mind." Moreover, it is well settled that an adult of ordinary intelligence assumes the risk of possible injury when he deliberately and voluntarily joins in a fight, or enters into a fight for the purpose of breaking it up. See *Cornelius v. Morris Brown College*, 299 Ga. App. 83, 86 (3) (681 SE2d 730) (2009); *Fagan v. Atnalta*, 189 Ga. App. 460, 462 (376 SE2d 204) (1988).

Scott admitted in his affidavit in support of his motion for summary judgment that he intervened in the fight. Thus, the evidence clearly and palpably shows that Scott was injured when he attempted to break up the fight between Jackson and the nurse, and "only one conclusion is permissible here: that [Scott] deliberately interjected himself into the [fight] and assumed the risk of injury by voluntarily confronting those who had begun it." (Citation and punctuation omitted.) *Cornelius*,

7

supra, 299 Ga. App. at 86 (3). Accordingly, we find that based upon the facts and law Scott assumed the risk. Therefore, we reverse the trial court's denial of Carter's motion for summary judgment on this ground.

In sum, we affirm the partial grant of summary judgment to Scott because Jackson's mental deficiencies did not relieve him of liability for his negligent acts. For the same reason, we affirm the denial of summary judgment to Carter on the issue of Jackson's mental capacity. However, we reverse the denial of summary judgment to Carter on the defense of assumption of the risk, because Scott assumed the risk of his injuries as a matter of law and fact.

*Judgment affirmed in part, and reversed in part. Ray and Branch, JJ., concur.*