77184. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. HURLEY et al.
(379 SE2d 420)

BANKE, Presiding Judge.

Hurley filed suit against Lassiter and Theta Xi, a college fraternity to which he and Lassiter both belonged, seeking to recover damages for injuries he allegedly sustained when Lassiter kicked him in the groin during an altercation which took place on the grounds of the fraternity. At the time of the incident, Lassiter was insured under the liability provisions of a homeowner's insurance policy issued by Geor-

gia Farm Bureau Mutual Insurance Company. Georgia Farm filed the present action against Hurley, Lassiter, and Theta Xi, seeking a judicial declaration that it has no obligation in the matter, due to a policy provision excluding coverage for *"bodily injury or property damage . . . which is expected or intended by the insured."* (Emphasis from original.) The trial court denied Georgia Farm's motion for summary judgment, and the case is currently before us pursuant to our grant of its application for an interlocutory appeal.

During his deposition, Lassiter testified that Hurley had pushed him three or four times and that he was trying to defend himself against Hurley when the injury occurred. He repeatedly and consistently denied any intention to kick Hurley in the groin, testifying as follows: "A. It was just a—just trying to push him away. I wasn't trying to hurt him. Q. With your foot? A. Yes, sir. Q. But, you did intend to make contact with him with your foot, not in the groin— A. Not in the groin. Q.—But in the—you were pointing it toward the upper chest area—A. Yes, sir. Q.—or rib area? A. Yes, sir, in the ribs just to push him away in self-defense. Q. And if Mr. Hurley wouldn't have turned as he did, your foot would not have landed—your foot would have landed in that area you pointed out to me before. A. Yes, sir. Q. Causing him some bodily discomfort but it would not have injured him in the groin, is that a fair statement? A. Yes, sir." *Held*:

"The general rule which appears to have developed through judicial interpretation and application of exclusionary provisions such as the one in the instant case is that they are inapplicable if and only if the insured acts without the intent or expectation of causing any injury, however slight. Conversely, such an exclusion is applicable if the insured acts with the intent or expectation that bodily injury occur, even if the actual, resulting injury is different either in kind or magnitude from that intended or expected. See generally, Annot. 2 ALR3d 1238, 1243 § 4 (1965). Thus, there is a recognized distinction between intentional and unintentional results of intentional acts." *Colonial Penn Ins. Co. v. Hart*, 162 Ga. App. 333, 335 (291 SE2d 410) (1982).

In *Pennsylvania Millers Mut. Ins. Co. v. Crews*, 184 Ga. App. 492 (361 SE2d 657) (1987), this distinction between intentional and unintentional results of intentional acts was applied in a suit to recover for injuries allegedly inflicted upon a minor child by a school principal during the administration of corporal punishment. We held that the school board's liability insurer was not entitled to summary judgment on the basis of an exclusionary provision similar to the one at issue in the present action, inasmuch as corporal punishment was statutorily authorized in Georgia schools and inasmuch as the principal had testified that he did not intend to injure the child.

In the present case, the insured maintains that he was acting in self-defense. A claim of self-defense will not always suffice to take an

insured's conduct outside the intentional injury exclusion of a liability insurance policy. See, e.g., *Stein v. Mass. Bay Ins. Co.*, 172 Ga. App. 811 (324 SE2d 510) (1984) (where the asserted act of self-defense involved the use of deadly force by the insured). However, a claim of self-defense should normally suffice to preclude a finding on motion for summary judgment that the conduct in question was unlawful as a matter of law. Thus, because the type and degree of force employed by the insured in the present case could reasonably be viewed as consistent with the absence of any intention on his part to cause injury (compare *Stein*, supra), and because the insured has testified unequivocally not only that he was acting in self-defense but that he did not in fact intend to injure Hurley, we conclude that a material fact issue remains as to whether his conduct falls within the ambit of the intentional injury exclusion. We accordingly hold that the trial court did not err in denying Georgia Farm's motion for summary judgment.

This court's decision in *Roe v. State Farm Fire & Cas. Co.*, 188 Ga. App. 368 (373 SE2d 23) (1988) (cert. granted), is not authority for a contrary conclusion, inasmuch as the alleged injuries there were the natural and unavoidable product of criminal misconduct—specifically, child molestation. The holding in *Antill v. State Farm Fire & Cas. Co.*, 178 Ga. App. 659 (344 SE2d 480) (1986), is completely inapposite, inasmuch as that case concerned the alleged tort of malicious prosecution and did not raise in any way the issue of unintended results of intentional physical acts.

*Judgment affirmed. McMurray, P. J., and Benham, J., concur. Deen, P. J., and Beasley, J., concur specially. Carley, C. J., Birdsong, Sognier and Pope, JJ., dissent.*

DEEN, Presiding Judge, concurring specially.

Although I concur fully with the majority opinion, the following thoughts should also be set forth.

In *Pennsylvania Millers Mut. Ins. Co. v. Crews*, 184 Ga. App. 492 (361 SE2d 657) (1987) (a 5-4 decision), in which a school principal and the county Board of Education had been sued by the father of a student allegedly injured when the principal spanked him, this court affirmed the trial court's award of summary judgment to the defendants in an action for declaratory judgment filed by their insurer, and held that the policy exclusion (closely similar to that in the instant case) did not apply. The court noted the existence of a statute specifically authorizing corporal punishment. In *Roe v. State Farm Fire & Cas. Co.*, 188 Ga. App. 368 (373 SE2d 23) (1988), the trial court held, and this court affirmed, that a similar policy exclusion *did* apply to the actions of the insured, a confessed child molester.

On its facts, the instant case falls somewhere between *Roe* and *Crews*, supra, but is closer to *Crews* than to *Roe*, inasmuch as appellee

Hurley was not engaged in a course of conduct inherently illegal or immoral. While not necessarily dissenting from the judgment in *Roe*, supra, I would concur with the position taken in Judge Beasley's concurring opinion regarding the construction of provisions of an insurance policy: "Insurance policy exclusions are to be strictly construed, 'against the insurer and in favor of providing the indemnity sought.' [Cit.]"

BEASLEY, Judge, concurring specially.

I concur for the reasons stated in the dissenting opinion in *Roe v. State Farm Fire & Cas. Co.*, 188 Ga. App. 368, 370 (373 SE2d 23) (1988). Subjectively intending physical contact is not necessarily intending bodily injury.

CARLEY, Chief Judge, dissenting.

Contrary to the majority's conclusion, I believe that this case is controlled by the rationale of *Antill v. State Farm Fire & Cas. Co.*, 178 Ga. App. 659 (344 SE2d 480) (1986). Based upon the record in this case, Hurley "either committed an intentional tort or [he] did not, and in either case [appellant] would not be liable under the policy." *Antill v. State Farm Fire & Cas. Co.*, supra. The only possible distinction in this case would be that the complaint contained vague allegations of negligence as well as averments as to an intentional tort. However, in *Pennsylvania Millers Mut. Ins. Co. v. Crews*, 184 Ga. App. 492 (361 SE2d 657) (1987), a plurality of this Court based its determination as to the non-applicability of the policy exclusion upon the underlying evidence in the case, and not just the allegations of the complaint. A majority of the judges concurred in the result of the case which could have been reached only on the basis of this reasoning. It is true that in *Crews*, the majority found the policy exclusion to be inapplicable because the evidence would "warrant the conclusion that the injury was an unintended consequence of the spanking." *Pennsylvania Millers Mut. Ins. Co. v. Crews*, supra, 493. However, the distinction between *Crews* and this case is that in *Crews*, the court relied upon a statute specifically authorizing corporal punishment in Georgia schools. Thus, while the act of "spanking" in *Crews* was statutorily sanctioned, there is no statute which would authorize Hurley's act of "kicking" in this case.

Although Hurley contends that his intentional act of kicking Lassiter was not intended to result in the injury to Lassiter's groin, the policy exclusion "is applicable if the insured acts with the intent or expectation that bodily injury occur, even if the actual, resulting injury is different either in kind or magnitude from that intended or expected." *Colonial Penn Ins. Co. v. Hart*, 162 Ga. App. 333, 335 (291 SE2d 410) (1982). See also *Stein v. Mass. Bay Ins. Co.*, 172 Ga. App.

811 (324 SE2d 510) (1984); *Roe v. State Farm Fire & Cas. Co.*, 188 Ga. App. 368 (373 SE2d 23) (1988). Because I believe that the trial court erred in failing to grant summary judgment in favor of the insurer based upon the policy exclusion, I respectfully dissent.

I am authorized to state that Judge Birdsong, Judge Sognier and Judge Pope join in this dissent.

DECIDED FEBRUARY 15, 1989 —
REHEARING DENIED MARCH 2, 1989 —

*Dillard & Landers, Bryant H. Bower, Jr., Terry A. Dillard,* for appellant.
*William E. Moore, Jr., John W. Case,* for appellees.