A93A0720. STATE FARM FIRE & CASUALTY COMPANY v. CARTER et al.
(432 SE2d 614)

BEASLEY, Presiding Judge.

Lowery sued Carter, alleging that Carter had wilfully caused him personal injury. Carter filed a third-party complaint against State Farm, asserting that State Farm was obligated to defend him and pay any judgment under a homeowner's insurance policy on his Alabama residence.

State Farm moved for summary judgment on the ground that the policy excludes coverage for "bodily injury or property damage: (1) which is either expected or intended by an insured; or (2) to any person or property which is the result of willful and malicious acts of an insured." Interlocutory appeal from the trial court's denial of the motion was permitted. OCGA § 5-6-34 (b).

Carter and Lowery were patrons in a bar. In a transcribed statement, Carter stated that he and his friend Nancy had gone to the bar in the company of Judy, a younger woman; and as a joke, they told Lowery, whom Judy had met, that they were Judy's parents. When Carter was ready to leave, he asked Lowery if he was going to take care of Carter's daughter. Lowery stated that this was not his damn daughter and asked whether "you get yourself off on taking care of young girls." Carter took umbrage at this remark and "swung at the man. Not intending to injure him but just to more or less save face. . . ." The next thing Carter knew he was on the ground and had Lowery in a headlock. Carter's punch landed on Lowery's jaw, breaking it. Carter stated that evidently as he swung at Lowery there was a "deter" of his hit, that he did not intend to injure Lowery in any way whatsoever, and that he did not intend to hit him in the jaw.

In an affidavit, Carter later stated that Lowery had become verbally and physically aggressive and that he had swung at him, without any intent or desire to injure or cause bodily injury to him in any way, but as a response to his aggressive behavior out of fear that Lowery would attack him. Carter stated that in swinging at Lowery he was hoping to frighten him into backing down and thereby prevent Lowery from attacking him.

The trial court held that Alabama law is applicable under the rule of lex loci contractus. The court stated that although it is undisputed that Carter intended to swing at Lowery, he denies intending to injure him. Citing *Ala. Farm Bureau Mut. Cas. Ins. Co. v. Dyer*, 454 S2d 921 (Ala. 1984), the court held that a purely subjective standard governs the determination of whether the insured expected or intended to inflict bodily injury, and for this reason it cannot be said that there is no genuine issue of material fact. Citing *Ga. Farm Bureau Mut. Ins. Co. v. Hurley*, 190 Ga. App. 546 (379 SE2d 420) (1989), the court held that the same result would obtain under Georgia law.

*Dyer* and *Hurley* are factually distinguishable. In *Dyer,* a person fired a gun but there was evidence that he did not think it was loaded. In *Hurley,* the insured kicked the plaintiff in the groin while involved in an altercation but testified that he was acting in self-defense and only intended to push him away. On the other hand, Carter's assertion of what amounts to self-defense in his affidavit may be regarded by a jury as inconsistent with his earlier transcribed statement that he was insulted by Lowery's remark and swung at him to save face. Or these two expressions may be seen as dual motives for the act, motives which are indications of intent. Moreover, as recognized in *Hurley,* a claim of self-defense will not always suffice to take an insured's conduct outside the intentional injury exclusion of a liability insurance policy. Nonetheless, in *Hurley,* we held that the type and degree of force employed by the insured could reasonably have been viewed as consistent with the absence of any intention on his part to cause injury. In *Continental Western Ins. Co. v. Toal,* 244 NW2d 121, 125 (4) (Minn. 1976), cited approvingly in *Dyer,* supra at 925, the Court held that the character of the acts in that case was such that an intention to inflict injury was inferred as a matter of law.

An intention on Carter's part to *hit* Lowery, coupled with a blow of sufficient force to break his jaw, would conclusively show an expectation of injury or an intention to cause injury. However, a jury could interpret Carter's statements as being that he only intended to *swing* at Lowery and that he did not intend to strike him. His motive, or motives, are given as evidence of his intention. "Motive is the reasons and beliefs that lead a person to act or refrain from acting" while " '[i]ntent' refers to the actor's state of mind or volition." *State v. Wyant,* 597 NE2d 450, 453-454 (Ohio 1992). They are related; motive answers "why" whereas intent answers "what." If under the circumstances a jury could not reasonably believe that Carter intended to swing at Lowery but did not intend to hit him, it was State Farm's burden on motion for summary judgment to show so conclusively. State Farm has not done this.

Because Carter's intent is ambiguous as a matter of fact, the trial

court did not err in denying State Farm's motion for summary judgment. Compare *Kennedy v. State Farm Fire &c. Co.,* 738 FSupp. 511 (S.D. Ga. 1990) (where the insured repeatedly struck the plaintiff). It will be up to the jury to determine whether Carter's actions speak louder than his words in revealing his intent.

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 8, 1993.

*Jones, Cork & Miller, Thomas C. Alexander,* for appellant.
*Talbot, Ladson, Rowe & Edwards, Deborah A. Edwards, Arthur H. Clarke, Jr., Martin, Snow, Grant & Napier, Robert R. Gunn II, Miller & Towson, Daniel Bullard IV,* for appellees.