A94A2646. WEST AMERICAN INSURANCE COMPANY
v. MERRITT et al.
(456 SE2d 225)

POPE, Presiding Judge.

Richard Detore lost sight in one of his eyes after being struck by a BB fired by Michael Merritt. The record shows that Michael and Richard, both of whom are teenagers, are friends and that they and other friends had walked home from school together on the day in question. Michael proceeded to his house and got his tennis racquet and returned to a nearby tennis court. Richard went to his house and got several BB rifles he owned. Michael was serving a tennis ball when he was struck in the buttocks with a BB fired by Richard. Michael ran after Richard with the intention of hitting him with his fist, but was restrained by another friend. According to Michael's deposition testimony, he picked up one of the BB rifles Richard had brought from his house and fired it twice at Richard's legs. The rifle did not discharge on either firing and Michael picked up another BB rifle, and told Richard he had ten seconds to run. Richard did not run on the first count of ten, but started running about half-way through the second count of ten. When Richard was about 35 feet from Michael, he assumed a squatting position and cupped his hands around the sides of his face. Michael testified Richard's side was to him and that he pumped the gun twice and fired, aiming at Richard's flank or thigh area. Michael also testified that his intent was for the BB to hit Richard and for Richard to experience the same stinging he had felt in his buttocks when he was struck by the BB fired by Richard.

The Detores filed a lawsuit against the Merritts seeking to recover for Richard's injuries. Appellant West American Insurance Company filed a declaratory judgment action, seeking a determination of coverage under a homeowners insurance policy it had issued to

the Merritts. West American then filed a motion for summary judgment, contending it had no obligation in the matter due to a policy provision excluding coverage for bodily injury expected or intended by the insured. The trial court denied West American's motion for summary judgment, and issued a certificate of immediate review. We granted West American's application for interlocutory review, and this appeal followed.

"It is important to remember that the legal issues here rise from contract law and not tort or criminal law. Consequently, policy considerations differ from those in tort and criminal cases. Public policy does not prevent a party from assuming by contract duties more burdensome than those imposed by law because of a party's right to refuse the contract. The fact that the insurer drafts the policy adds validity to this statement." *State Farm Fire &c. Co. v. Morgan*, 258 Ga. 276 (368 SE2d 509) (1988). "In applying the rules of construction insurance policy exclusions are construed most strongly against the insurer and in favor of providing the indemnity sought." (Citation omitted.) *Southern Guaranty Ins. Co. v. Saxon*, 190 Ga. App. 652 (379 SE2d 577) (1989).

This court has had several occasions to address the question of the applicability of exclusionary provisions such as the one at issue in this case. Succinctly stated, if the insured intends some injury, however slight or minor, and a different or greater injury occurs, then the exclusion applies. However, even if the insured acts in an intentional manner, but does not intend or expect for his action to result in injury to another, then the exclusion does not apply. "Thus, there is a recognized distinction between intentional and unintentional results of intentional acts. 'Intent' is defined in *Restatement, Torts* 2d, § 8A (1965) 'to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.' 'On the other hand, the mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent.' Prosser, The Law of Torts, p. 32 § 8 (4th ed. 1971)." *Colonial Penn Ins. Co. v. Hart*, 162 Ga. App. 333, 335 (291 SE2d 410) (1982). " '(A)n exclusion as to injury caused intentionally by the insured does not exclude coverage where there is an intentional act but not an intentionally caused injury.' 7 AmJur2d 695, Auto. Ins., § 191." *Southern Guaranty v. Saxon*, 190 Ga. App. at 654.

As the trial court in this case found, there is no question that Michael intended to fire the BB at Richard and that he intended for the BB to strike Richard. Michael also testified that his intent was for Richard to experience a stinging pain, and that he did not intend or expect Richard to experience physical injury or harm. Michael further testified that he did not consider the possibility that he might hit Richard somewhere other than the buttocks. Michael testified that

he, Richard and others had engaged in "BB war" in the past and that the players were often hit with BB's but no physical injury had ever resulted. Michael testified that although he wore goggles during these games, the other players did not.

We agree that the trial court properly denied the insurer's motion for summary judgment under these facts, finding that a fact question remains as to the insured's intent in this case. This court has made a distinction between intent to cause physical pain, and intent to cause physical injury in the context of insurance exclusionary provisions. *Ga. Farm Bureau Mut. Ins. Co. v. Hurley*, 190 Ga. App. 546 (379 SE2d 420) (1989) (denial of summary judgment to insured proper when kick to the groin was meant to cause bodily discomfort but not injury); *Penn. Millers Mut. Ins. Co. v. Crews*, 184 Ga. App. 492 (361 SE2d 657) (1987) (summary judgment to insured proper where evidence showed principal intended to inflict pain but not injury while paddling student). "This view is in accord with the general rule, that the three most basic elements of intent within this context 'appearing both in the Restatement (of Torts Second) and in court usage are that (1) it is a *state of mind* (2) about *consequences* of an act (or omission) and not about the act itself, and (3) it extends not only to having in the mind a purpose (or desire) to bring about given consequences but also to having in mind a belief (or knowledge) that given consequences are substantially certain to result from the act. . . . It is also essential that the state of mind of intent exist when the act occurs. Additional elements of the concept concern the extent to which the intent may relate to different persons or different consequences from those at issue.' (Emphasis in text.) Prosser & Keeton on the Law of Torts 33, 34, § 8 (pocket part at p. 15) (5th ed. 1984)." *Reliance Ins. Co. v. Walker County*, 208 Ga. App. 729, 732 (431 SE2d 700) (1993). See also *Ga. Farm Bureau Mut. Ins. Co. v. Purvis*, 213 Ga. App. 239 (444 SE2d 109) (1994) (summary judgment to insurer proper where evidence showed injury to the property was intended, although resulting injury was greater than that intended); *Roe v. State Farm Fire &c. Co.*, 188 Ga. App. 368 (373 SE2d 23) (1988), aff'd 259 Ga. 42 (376 SE2d 876) (1989) (injury intended or expected when it naturally and unavoidably flows from criminal misconduct).

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED FEBRUARY 23, 1995 —
RECONSIDERATION DENIED MARCH 23, 1995.

*Sullivan, Hall, Booth & Smith, John E. Hall, Jr., Jeffrey T. Wise,* for appellant.

*Samuel P. Pierce, Jr., Freisem, Swann & Malone, John A.*

*Swann,* for appellees.